UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

| Present: The Honorable | Audrey B. Collins, Chief United States District Judge |
|---|---|

| Angela Brigdes | Not present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   ORDER RE: MOTION TO ENFORCE JUDGMENT
(In Chambers)

     Pending before the Court is Defendant and Judgment Creditor DIC Animation City, Inc.'s ("Defendant" or "DIC") Motion to Enforce Judgment by Selling Real Property Owned by Judgment Debtor Mary Kling ("Motion"), filed on March 9, 2012. Plaintiff and Judgment Debtor Mary Kling ("Plaintiff" or "Kling") filed an Opposition on March 18, 2012, and DIC filed a Reply on March 22, 2012. The Court finds the matter appropriate for resolution without oral argument and **VACATES** the hearing. See Local Rule 7-15. For the reasons set forth below, the Court **GRANTS** the Motion.

**I. BACKGROUND**

     DIC obtained a judgment against Mary Kling in February 2001. On October 8, 2010, the Court renewed that judgment in the amount of $90,335.59, which was the amount of the original judgment plus interest. Kling has not paid any of the judgment. On September 19, 2011, DIC filed a motion to enforce its judgment by placing a lien on a state court lawsuit in which Kling's Family Trust was a plaintiff. The Court granted that motion.

     DIC now moves to enforce its judgment by forcing the sale of the Family Trust's 50% interest in commercial property located in Santa Monica. Kling opposes, arguing that the Family Trust's spendthrift clause shields the Trust's assets from creditors like DIC. But DIC contends that the spendthrift clause is invalid because Mary Kling is both the settlor and beneficiary of the Family Trust.

**II. DISCUSSION**

**A.   Jurisdiction and Procedure**

     Federal Rule of Civil Procedure 69(a)(1) provides

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

This Court must therefore follow the "procedure" of California to enforce DIC's judgment. As relevant to this Motion, California law governing the enforcement of money judgments allows a judgment creditor to force the sale of commercial real property owned by the judgment debtor. See Cal. Code Civ. P. §§ 695.010(a) and 699.710 (stating that all property of the judgment debtor is subject to enforcement of a money judgment, and that all property subject to enforcement is also subject to levy under a writ of execution); § 700.015 (describing procedure for levying officer to levy upon real property); § 701.510 (stating that the levying officer shall sell all property that has been levied upon); and §§ 701.540 through 701.830 (describing notice and sale procedures for sale of real property).

Here, however, DIC seeks to execute on Kling's interest in property as a trust beneficiary. Although Cal. Code Civ. P. § 699.720(a)(8) provides that the interest of a trust beneficiary is not subject to execution, section 709.010(b) provides that a trust beneficiary's interest can be reached by obtaining a court order. In that case, "The judgment debtor's interest in the trust may be applied to the satisfaction of the money judgment by such means as the court, in its discretion, determines are proper, including but not limited to imposition of a lien on or sale of the judgment debtor's interest . . ." Cal. Code Civ. P. § 709.010(b). Thus, because the 50% interest in the Property that DIC seeks to execute on is held by the Family Trust, DIC must obtain an order from this Court allowing it to so execute. The Court must therefore examine the circumstances under which California law allows a creditor to reach assets held in trust for a debtor.

Kling does not contest the Court's jurisdiction to enforce its judgment pursuant to these California procedures or its authority to order a sale. Rather, she argues that the trust assets cannot be reached. Because the nature of the Trust and Kling's relationship to it are dispositive, the Court will set out those facts.

**B.  The Family Trust's Santa Monica Property**

Spouses Mary Kling and Heywood Kling were the co-settlors of the Heywood F. and Mary Kling Revocable Living Trust ("Living Trust") dated July 28, 1987. (Mickelson Decl. Exh. 1 ("Trust Instrument") p. 1.) Mary Kling was named Trustee. (Id. p. 40.) Among the assets Mary and Heywood transferred to the Trust Estate is a parcel of commercial real property located in Santa Monica ("Santa Monica Property" or "Property"). (Id., Schedule A.) The Klings were also the beneficiaries of the Living Trust during their joint lifetimes. (Id. at III(A).)

The Trust Instrument directs that upon the death of one of the co-settlors of the Living Trust, a new trust called the Family Trust would be created. (Id. III(C)(2), p. 8-9.) The surviving spouse would become the beneficiary of the Family Trust. Id. Heywood Kling died on "April 10, 1998, at which time the [F]amily [T]rust was established" with Mary Kling as its Trustee and beneficiary. (Mickelson Decl. Exh. 2 ("Certification of Family Trust"), ¶ 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

Thereafter, on September 11, 1998, Mary Kling as Trustee of the Living Trust executed quitclaim deeds by which she (1) transferred to Mary Kling as Trustee of the Family Trust a fifty percent interest in the Santa Monica Property, and (2) transferred to Mary Kling in her personal capacity the other fifty percent interest in the Santa Monica Property. (Mickelson Decl. Exh. 3, Recorder's Office Title Search.) Mary Kling then transferred by quitclaim deed her personal fifty percent interest in the property to her son Anthony Kling. (Id. ) Thus, as a result of these transfers, fifty percent of the Santa Monica Property is held by Mary Kling as Trustee of the Family Trust, and fifty percent of the Property is held by Anthony Kling. The same Recorder's Office records show that DIC recorded its Judgment against Mary Kling's interest in the Property on January 18, 2002. (Id.)

As the surviving spouse, Mary Kling is both the Trustee and the beneficiary of the Family Trust. As Trustee, she is authorized to pay for the benefit of the beneficiary – herself – all of the income from the Trust, and, of the principal, whatever amount she, in her discretion, "considers necessary for [her] health, maintenance and support in accordance with [her] accustomed standard of living." (Trust Instrument IV(B).) Upon the death of the surviving spouse, the residue of the Family Trust is to be distributed to Anthony Kling. (Id. at V(B).)

Thus, the Trust Instrument and the Title Search show that Mary Kling, as Trustee and beneficiary of the Family Trust, holds a 50% interest in the Santa Monica Property. On its face, the Trust Instrument also shows that Mary Kling is a settlor of the Family Trust.

C.   **The Spendthrift Clause Is Invalid.**

Kling argues that the Family Trust's spendthrift clause insulates its assets from being used to satisfy DIC's judgment. The spendthrift clause reads, "No interest in the principal or income of any Trust created under this Trust Agreement shall be anticipated, assigned, encumbered, or subjected to creditor's claim or legal process, prior to actual receipt by the beneficiary." (Trust Instrument V(K).) Under Cal. Probate Code § 15301(a), such a provision is generally enforceable. See Cal. Probate Code § 15301(a) (stating "Except as provided in subdivision (b) and in Sections 15304 to 15307, inclusive, if the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest in principal may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.")

However, a trust's spendthrift clause is invalid where a debtor is both the settlor and a beneficiary of that trust. See Cal. Probate Code § 15304(a) ("If the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor.") The long-recognized purpose of this provision is to prevent debtors from shielding their assets from creditors by ostensibly alienating assets by transferring them to a trust, yet, as a practical matter, still enjoying those same assets as the trust's beneficiary. See, e.g., In re Cutter, 398 B.R. 6, 21 (9th Cir. BAP 2008) ("It is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it, and where the settlor makes himself a beneficiary of a

Case 2:97-cv-06293-ER-AJW Document 564 Filed 04/02/12 Page 4 of 7 Page ID #:992

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

trust any restraints in the instrument on the involuntary alienation of his interest are invalid and ineffective.") (citing Nelson v. California Trust Co., 33 Cal.2d 501, 502 (1949)). Given this purpose, "[t]he critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust's beneficiaries exercise excessive control over the trust. [] California law does not allow a participant with excessive control over his or her trust to shield that trust with an anti-alienation provision lacking true substance." In re Moses, 167 F.3d 470, 473 (9th Cir. 1999) (citation omitted).

### 1. Mary Kling is a Beneficiary of the Family Trust.

Here, as noted above, Mary Kling is the beneficiary of the Family Trust. Mary Kling points to the fact that her son Anthony is also a beneficiary, and suggests that because she is not the sole beneficiary of the trust, the Trust assetss cannot be used to satisfy the judgment. However, although Mary's son Anthony is also a beneficiary of the Family Trust, he is, more precisely, the beneficiary upon Mary's death of just the residue of the trust. (See Trust Instrument V(B)(2) (providing that "[t]he residue of the Trust Estate shall be held in trust and distributed for the benefit of the settlor's son, ANTHONY KLING . . ." ).) Anthony takes the residue only upon the Mary's death, and, during her lifetime, Mary has full power to exhaust the entirety of the Family Trust's assets. Thus, because Anthony is only a residuary beneficiary after Mary Kling dies, and because Mary, as trustee, has full discretion to exhaust the entirety of the Trust estate for her own benefit, Anthony's interest in the Trust cannot control whether a creditor can reach the Trust assets. Anthony Kling's interest is residual to and does not displace Mary Kling's interest.

### 2. Mary Kling is a Settlor of the Family Trust.

The parties disagree over whether Mary is the settlor of the Family Trust. The Trust Instrument refers to Mary and Heywood as "settlors," and the property placed in the Trust Estate was their joint property. Yet Mary argues that she is not in fact a settlor because the 50% interest in the Santa Monica Property that the Family Trust holds was Heywood's 50% community property interest in the Property. Mary contends that she transferred her 50% community property interest in the Property to Anthony on September 11, 1998. Under this view, Heywood (through the Living Trust), and not Mary, contributed the 50% interest in the Property to the Family Trust, and therefore Mary is not a settlor of the Family Trust.

This view is not supported by the Trust Instrument, the transfer documents, or by law. First, the Trust Instrument that created the Living Trust also created the Family Trust, and refers to Mary as a "settlor," a status that Mary affirmed by signing as a "settlor." The Instrument does not distinguish between the settlors of Living Trust and the settlors of the succeeding Family Trust.

Furthermore, the revocable Living Trust was simply a vehicle by which Heywood and Mary held property during their joint lifetimes and specified a disposition of that property upon one of their deaths. The Living Trust was not an independent entity. See Powers v. Ashton, 45 Cal. App. 3d 783, 787 (1975), ("[a]n ordinary express trust is not an entity separate from its trustees. . .") Similarly, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | | Date | April 2, 2012 |
|---|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | | |

Family Trust is not independent of its trustees. Thus, when Mary Kling transferred a 50% interest in the Santa Monica Property from the Living Trust to the Family Trust, she was merely transferring that property from one instrument that she owned and controlled to another instrument that she owned and controlled. The fact that the Property was held in the Living Trust before Mary transferred it to the Family Trust does not somehow nullify the fact that Mary is a settlor. To the contrary, Mary Kling as Trustee simply transferred assets to herself as beneficiary, and thereby became the settlor of the Family Trust.

Stated somewhat differently, as Trustee of the Living Trust, Mary held legal title to all of the property in that Trust, and as beneficiary, Mary held equitable title to that property. Therefore, Mary held all aspects of title to the Living Trust's assets when, as Trustee, she transferred its 50% interest in the Property to its succeeding Family Trust, to which she also holds legal and equitable title. As such, Mary transferred the 50% interest in the Property to the Family Trust, and, as to that asset, is clearly the settlor of the Family Trust.

In addition, the quitclaim deed transferring a 50% interest in the Santa Monica Property from Mary Kling as Trustee of the Living Trust to Mary Kling as Trustee of the Family Trust does not purport to transfer Heywood's 50% community property interest in the Property; rather, it transferred an "undivided 50% interest" in the Property. (Mickelson Decl. Exh. 3.) Similarly, the quitclaim deed by which Mary transferred a 50% interest from herself as Trustee of the Living Trust to herself personally also transferred an "undivided 50% interest," rather than Mary's 50% community property interest. Thus, the key transfer documents do not reflect the disposition that Mary now argues occurred; rather, those documents reflect that Mary transferred "undivided" interests.

Furthermore, underlying Mary's argument that the 50% interest transferred to the Family Trust was Heywood's community property is the notion that the Santa Monica Property somehow retained its community property character after Heywood's death. This position is not sound. The Trust Instrument states that the settlors intend that the "community property transferred to this Trust . . . shall continue to retain its character as community property **during the joint lifetimes of the Settlors**." (Trust Instrument I(A) (emphasis added).) By its terms, this clause refers to the character of the property during the settlor's joint lifetimes and says nothing about its character after one of the co-settlors dies. Furthermore, regardless of whatever the co-settlors' intentions were, because the Property was placed in the Trust, it was not part of Heywood's estate upon his death. As such, the Property was not subject to the community property rules found in probate, but instead was to be disposed of according to the terms of the Trust. See In re Heigho's Estate, 186 Cal. App. 2d 360, 364-365 (1960) ("Property which the decedent in his lifetime transferred [to a trust] by valid conveyance is no longer a part of his estate, and consequently does not figure in the probate proceedings."); see also Probate Code § 104 ("Community property held in a revocable trust . . . is governed by the provisions, if any, in the trust for disposition in the event of death.") Therefore, whatever community property character the Klings sought to retain during their joint lifetimes was, by the terms of the trust and pursuant to California law, extinguished upon Heywood's death and the property was disposed of according to the terms of the Living Trust, as the law requires.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

For the foregoing reasons, Mary Kling is both a settlor and beneficiary of the Family Trust. Accordingly, pursuant to Probate Code § 15304(a), the spendthrift clause is "invalid against . . . creditors of the settlor." In light of Mary Kling's thorough control over the Family Trust as settlor, trustee, and beneficiary, California law will not uphold the Family Trust's spendthrift clause. See In re Moses, 167 F.3d at 473 ("California law does not allow a participant with excessive control over his or her trust to shield that trust with an anti-alienation provision lacking true substance.") (citation omitted). Judgment creditor DIC can therefore execute its judgment against the Family Trust's property, including against the Family Trust's 50% interest in the Santa Monica Property.

**D.    Mary Kling Is Settlor as to the Family Trust's Entire 50% Interest in the Property**

Having decided that DIC's judgment can be satisfied with the Family Trust's 50% interest in the Sant Monica Property, the Court must determine how much of that interest is available for that purpose. Probate Code § 15304(b) is dispositive of this question; it provides:

> If the settlor is the beneficiary of a trust created by the settlor and the trust instrument provides that the trustee shall pay income or principal or both for the education or support of the beneficiary or gives the trustee discretion to determine the amount of income or principal or both to be paid to or for the benefit of the settlor, a transferee or creditor of the settlor may reach the maximum amount that the trustee could pay to or for the benefit of the settlor under the trust instrument, not exceeding the amount of the settlor's proportionate contribution to the trust.

Thus, if Mary Kling is a settlor and beneficiary of the Family Trust, and if the Family Trustee vests the Trustee (Mary) with discretion to determine what amount to pay to Mary, DIC can reach the maximum amount the Trustee can pay, up to the amount that Mary contributed to the Trust.

As discussed above, Mary Kling is a settlor of the Family Trust: she contributed her undivided interest in the Santa Monica Property to the Living Trust, and then, as Trustee of the Living Trust, conveyed a 50% interest in the Santa Monica Property to the Family Trust. Mary is also undisputably a beneficiary of the trust.

In addition, the Trust Instrument vests the Trustee (also Mary Kling) with discretion to pay any amount of income and principal she "considers necessary for [her own] health, maintenance and support in accordance with [her] accustomed standard of living." (Trust Instrument IV(B).) The Trust Instrument does not purport to place any limit on the Trustee's discretion to pay any income or principal to Mary, and, accordingly, the Trustee has discretion to pay the entirety of the Trust property to Mary. Therefore, pursuant to § 15304(b), DIC can reach all of the Family Trust Property that Mary Kling contributed to the Trust. See In re Cutter, 398 B.R. at 21 ("Under the Trust Agreement, Debtor as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-6293 ER | Date | April 2, 2012 |
|---|---|---|---|
| Title | Mary Kling v. Hallmark Cards, Inc., et al. | | |

Trustee could potentially use all of the Trust's principal and income to maintain his standard of living; no limitation is placed on the amount that he can use for that purpose. Thus, under California Probate Code section 15304(b), a creditor of Debtor could reach all of the Trust assets contributed by Debtor.") As Trustee of the Living Trust, Mary contributed the entire 50% interest in the Santa Monica Property to the Family Trust, and therefore she is the settlor as to that entire 50% interest. DIC can therefore reach the entirety of that 50% interest to satisfy its judgment.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Mary Kling is the settlor and beneficiary of the Family Trust, and thus finds that the Trust's spendthrift clause is invalid. The Court therefore finds that it is appropriate to enforce Judgment Creditor DIC Animation City, Inc's judgment against Judgment Debtor Mary Kling by forcing the sale of the Family Trust's 50% interest in the Santa Monica Property. Because the Court also finds that Mary Kling is settlor as to the Family Trust's entire 50% interest in the Property, all proceeds from the sale of that 50% interest may be used to satisfy DIC's judgment.

**IT IS SO ORDERED.**

                                                                                    :
                                                    Initials of Preparer    AB